*Picard v. Magliano*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2021

Argued: October 25, 2021     Decided: July 27, 2022

Docket No. 20-3161

MICHAEL PICARD,

*Plaintiff-Appellee,*

— v. —

MICHAEL MAGLIANO, in his official capacity as Chief of Public Safety for the New York Unified Court System,

*Defendant-Appellant,*

DARCEL D. CLARK, in her official capacity as District Attorney for Bronx County,

*Defendant.*

B e f o r e:

NEWMAN, LYNCH, and PARK, *Circuit Judges.*

Defendant-Appellant Michael Magliano, represented by New York's Attorney General, appeals from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*) holding that New York Penal Law § 215.50(7), which prohibits certain speech within a 200 feet radius of a courthouse, violates the First Amendment of the United States Constitution and permanently enjoining the enforcement of the statute in all circumstances. The State of New York argues that Plaintiff-Appellee Michael Picard lacked standing to challenge the statute and that the district court erred in granting an injunction that enjoined enforcement of the statute in all circumstances, beyond its application to Picard's own conduct in this case. We conclude that while Picard has standing to challenge the statute, the district court erred in granting such a broad injunction. We therefore **VACATE** the judgment of the district court and **REMAND** with instructions to enjoin the application of NYPL § 215.50(7) only in the circumstances presented by Picard's conduct in this case.

Judge NEWMAN concurs in part and dissents in part in a separate opinion.

–––––––––

ERIC DEL POZO, Assistant Solicitor General, New York, NY (Letitia James, Attorney General; Barbara D. Underwood, Solicitor General; Steven C. Wu, Deputy Solicitor General, *on the brief*), *for Defendant-Appellant Michael Magliano.*

BRIAN M. HAUSS, (Arianna M. Demas, *on the brief*), American Civil Liberties Union Foundation, New York, NY, *for Plaintiff-Appellee Michael Picard.*

Dwayne D. Sam, Christina Jones, Karsyn N. Keener (law student), Patton Solowey (law student), Williamsburg, VA, *for Amicus Curiae William & Mary Law School Appellate and Supreme Court Clinic.*

–––––––––

GERARD E. LYNCH, *Circuit Judge*:

This appeal concerns the constitutionality of New York Penal Law ("NYPL") § 215.50(7) and its application to an individual protestor who wishes to promote the general concept of jury nullification outside New York courthouses. Under NYPL § 215.50(7), a person is guilty of criminal contempt in the second degree if, within a radius of 200 feet of a courthouse, he or she "calls aloud, shouts, holds or displays placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse."

In late 2017, Michael Picard, a self-described civil libertarian, stood on the sidewalk outside the Bronx County Hall of Justice holding a sign that read, "Jury Info" and handing out flyers to passersby directing them to "Google Jury Nullification." A New York State Court Officer told Picard to move and warned him that he would be arrested if he did not move at least 200 feet from the courthouse. Picard, however, refused to move. The officer then arrested Picard for violating NYPL § 215.50(7). A Bronx County Assistant District Attorney ultimately declined to prosecute Picard because the officer had not measured how far from the courthouse Picard was standing when he was arrested. Picard

3

later filed suit in federal district court, pursuant to 42 U.S.C. § 1983, alleging that NYPL § 215.50(7) violated the First Amendment and seeking an injunction prohibiting its enforcement.

On July 29, 2020, the United States District Court for the Southern District of New York (Denise Cote, *J.*) issued an order holding that NYPL § 215.50(7) violates the First Amendment of the United States Constitution and permanently enjoining the defendants from enforcing it. The present appeal followed. On appeal, the State argues that Picard lacked standing to challenge the statute. Alternatively, the State argues that, even if Picard had standing, the district court erred by permanently enjoining enforcement of the statute in all circumstances rather than only its enforcement against conduct like Picard's.

We hold that while Picard does have standing to challenge the constitutionality of the statute as applied to him, the district court erred in granting a broad injunction against the enforcement of the statute in all circumstances. We therefore VACATE the injunction and REMAND to the district court to enjoin the enforcement of NYPL § 215.50(7) only in the circumstances presented by Picard's conduct in this case.

## BACKGROUND

Michael Picard is a self-described civil libertarian who advocates jury nullification as an "effective means to protest unjust laws." App'x at 29. Picard began publicly advocating jury nullification in early 2016 when he first started passing out pamphlets with information on jury nullification to passersby on public sidewalks outside courthouses in Connecticut and Massachusetts. Picard maintains that he has never "attempted to influence a juror's vote in a particular case" and that he does not "research which trials are occurring before visiting a courthouse to advocate jury nullification." App'x at 30.

On December 4, 2017, Picard stood on a public sidewalk outside the Bronx County Hall of Justice in New York near the main entrance of the courthouse. Picard held a sign that stated, "Jury Info." App'x at 30. Picard also held flyers that read "No Victim? No Crime. Google Jury Nullification" on one side and "'One has a moral responsibility to disobey unjust laws' – Martin Luther King Jr." on the other side. App'x at 30. Picard distributed flyers to about four pedestrians. Picard claims that he was "not aware of any particular cases in which jurors were being impaneled or serving at the time" and that he did not "discuss any particular criminal proceedings with anyone." App'x at 30.

5

At around 8:05 AM, a New York State Court Officer approached Picard and told him that it was "against the law to distribute flyers about jury nullification within two hundred feet of a courthouse." App'x at 31. The officer also repeatedly asked Picard to move and told Picard that he would be arrested if he did not move at least two hundred feet away from the courthouse. Picard refused to move, arguing that he was standing on a public sidewalk and that he was allowed to advocate jury nullification by passing out the flyers. The officer then arrested Picard for violating NYPL § 215.50(7) and took him into custody. NYPL § 215.50(7) provides:

> A person is guilty of criminal contempt in the second degree when he engages in any of the following conduct: . . . On or along a public street or sidewalk within a radius of two hundred feet of any building established as a courthouse, he calls aloud, shouts, holds or displays placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial.

Picard was released from police custody at around 6:00PM that day. A Bronx County Assistant District Attorney declined to prosecute Picard for the alleged violation of NYPL § 215.50(7) because, according to the "Affidavit in

6

Support of Declining/Deferring Prosecution," the arresting officer "did not measure the distance between [Picard] and the courthouse, [so] the People have insufficient evidence to meet their burden of proof at trial and as such, the charges must be dismissed." App'x at 40.

Picard claims that since his arrest, he has not promoted jury nullification within two hundred feet of a New York courthouse out of fear that he would again be arrested and possibly prosecuted for violating NYPL § 215.50(7). Absent his fear of NYPL § 215.50(7), Picard states, he would continue to promote jury nullification outside New York courthouses.

On April 5, 2019, Picard filed this action under 42 U.S.C. § 1983 against defendant-appellant Michael Magliano, the Chief of Public Safety for the New York Unified Court System, and defendant Darcel D. Clark, the District Attorney for Bronx County, in their official capacities. Picard sought declaratory and injunctive relief and asserted that NYPL § 215.50(7) is facially unconstitutional because "it imposes content-based restrictions on speech in a traditional public forum" and because it is "substantially overbroad" as it "encompasses a large amount of speech related to the judicial process that poses no threat to the due administration of justice." App'x at 14-15. Picard also alleged that NYPL

7

§ 215.50(7) violates the First Amendment as applied to his jury nullification advocacy.

Both defendants moved to dismiss the complaint, arguing that Picard lacked standing to challenge the statute and, with respect to Clark, that his complaint failed to state a claim. The district court denied those motions on December 2, 2019, concluding, as relevant to this appeal, that Picard had standing to challenge the constitutionality of NYPL § 215.50(7). *Picard v. Clark*, No. 19-cv-3059, 2019 WL 6498306, at *4 (S.D.N.Y. Dec. 2, 2019).

The district court then held a bench trial on the written record, with both parties filing written submissions. On July 29, 2020, the district court found in favor of Picard, holding that NYPL § 215.50(7) "violates the First Amendment of the U.S. Constitution because it is a content-based restriction on speech in a public forum that fails strict scrutiny." *Picard v. Clark*, 475 F. Supp. 3d 198, 208 (S.D.N.Y. 2020).

Neither party disputed that NYPL § 215.50(7) was "directed towards a compelling state interest," namely, "to protect the integrity of the judicial process by shielding trial participants, including jurors and witnesses, from undue influence during their engagement in trials," which "promotes the rule of law

and the legitimate functioning of the justice system." *Id.* at 204. But the parties did dispute whether NYPL § 215.50(7) was narrowly tailored to serve that interest.

The defendants argued that NYPL § 215.50(7) was "narrowly drawn to restrict speech in the immediate vicinity of a state courthouse that is likely to disrupt or unduly influence a pending trial." *Id.* at 206. But the district court found that NYPL § 215.50(7) went beyond criminalizing expression that was likely to disrupt ongoing court proceedings, as the text of the statute itself did not "state that the prohibited expression must directly tend to interrupt court proceedings." *Id.* The district court further determined that the defendants failed to show that "the state must criminalize speech in this way to protect the integrity of ongoing trials" and that if speakers were "obstructing passage on the sidewalks or engaging with others in demonstrations," there were "content-neutral regulations to maintain public order and access to a public building" as well as criminal statutes designed to target those who "tamper intentionally with jurors or witnesses." *Id.* The district court further found that the defendants failed to offer a "readily available alternative construction" of NYPL § 215.50(7) that would "accomplish the perceived goal of the legislation and avoid a

9

constitutional question," and that there was in fact no such plausible construction. *Id.* at 207.

The district court then found that Picard was entitled to a permanent injunction against the enforcement of NYPL § 215.50(7), reasoning that Picard had demonstrated success on the merits and met the irreparable harm requirement, and also that a legal remedy would be inadequate and that the balance of hardship tilted in favor of permanently enjoining enforcement of NYPL § 215.50(7). *Id.*

After directing the parties to submit a proposed final judgment, *id.* at 208, the district court entered the final judgment and order on August 14, 2020, declaring that NYPL § 215.50(7) facially violated the First Amendment and permanently enjoining the defendants from enforcing the statute. Defendant-Appellant Magliano, represented by New York's Attorney General, then appealed the July 29, 2020 opinion and the August 14, 2020 final judgment and order. Defendant Clark did not appeal.

## DISCUSSION

### I. Standard of Review

We review de novo a district court's rulings on questions of standing. *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021). We also review de novo a "district court's interpretation and application of state law." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 63 (2d Cir. 2017). And we review de novo a district court's "decision following a bench trial on stipulated facts." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015).

"We review the award of permanent injunctive relief for abuse of discretion." *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96 (2d Cir. 2012). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (citation omitted).

## II. Analysis

The State raises two main issues on appeal: first, whether Picard has standing to challenge the constitutionality of NYPL § 215.50(7); and second, even if Picard did have standing, whether the district court abused its discretion by invalidating NYPL § 215.50(7) in its totality, rather than only as applied to Picard's conduct. We will address each of these issues in turn.

### A. Standing

The State first challenges the district court's judgment on the ground that Picard lacks Article III standing because "his intended activities plainly do not violate § 215.50(7), and he therefore does not face a legitimate risk of conviction under that statute." Appellant's Br. 1.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (alterations adopted), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

12

(1992).[1] An Article III-sufficient injury, however, must be "'concrete and particularized' and 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* at 158, quoting *Lujan*, 504 U.S. at 560.

Pre-enforcement challenges to criminal statutes are "cognizable under Article III." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). As the Supreme Court has made clear, a plaintiff has suffered an injury-in-fact and has standing to bring a case when he is facing the "threatened enforcement of a law" that is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 158-59. Specifically, a plaintiff "satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159, quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see also Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (noting that a plaintiff has "standing to make a pre[-]enforcement challenge when fear of criminal prosecution under an allegedly

---

[1] The State does not appear to challenge the district court's findings regarding the causality and redressability prongs of the standing analysis. *Picard*, 2019 WL 6498306, at *3. Accordingly, we focus on the "injury-in-fact" requirement.

13

unconstitutional statute is not imaginary or wholly speculative") (quotation marks and citation omitted).

A plaintiff need not first "'expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015), quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007); *see also Babbitt*, 442 U.S. at 298 (noting that a plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief") (citation omitted). And, as is relevant to Picard's case given his prior arrest, "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Susan B. Anthony List*, 573 U.S. at 164, quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue, and will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Cayuga Nation*, 824 F.3d at 331 (quotation marks and citation omitted). Nevertheless, the "standard established in *Babbitt* 'sets a low threshold and is quite forgiving to plaintiffs seeking such

14

pre[-]enforcement review,' as courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" *Id.*, quoting *Hedges*, 724 F.3d at 197.

The dispute between the parties over standing turns primarily on the proper interpretation of NYPL § 215.50(7) and whether the statute applies to Picard's conduct. The State argues that NYPL § 215.50(7) does not plausibly apply to Picard's conduct and that he therefore does not have standing to challenge the statute, while Picard argues that his "feared interpretation of § 215.50(7) is at least reasonable enough to support standing." Appellee's Br. 16.

This type of dispute is not novel. In *Susan B. Anthony List v. Driehaus*, for example, the Supreme Court considered a statute that prohibited certain "false statements" regarding a political candidate or public official's voting record. 573 U.S. at 151-52. The respondents in that case argued that the petitioners' fears of facing enforcement of the statute were "misplaced" because the petitioners insisted that their speech was "factually true," and therefore prosecution for those statements was unlikely as they were, by definition, outside the ambit of a statute that only proscribed false statements. *Id.* at 163. But the Supreme Court rejected the respondents' argument, noting that "[n]othing in this Court's

15

decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Id.* And in applying the *Babbitt* standard to the facts of *Susan B. Anthony List*, the Supreme Court considered whether the petitioners' intended conduct was "*arguably* . . . proscribed by [the] statute," *id.* at 162 (emphasis added), quoting *Babbitt*, 442 U.S. at 298, not whether it was in fact proscribed under the best interpretation of the statute or under the government's own interpretation of the statute.

The Supreme Court's opinion in *Susan B. Anthony List* makes clear that courts are to consider whether the plaintiff's intended conduct is "*arguably* proscribed" by the challenged statute, not whether the intended conduct is *in fact* proscribed. We have made similar determinations when applying our own "reasonable enough" standard in similar cases involving questions of standing. Under that standard, "[i]f a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation, the plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has standing to challenge the statute." *Pac. Cap. Bank, N.A. v. Conn.*, 542 F.3d 341, 350 (2d Cir. 2008), quoting *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

16

Our "reasonable enough" standard, which predates the Supreme Court's decision in *Susan B. Anthony List*, essentially corresponds to that decision's "arguably proscribed" standard in that both standards consider whether the plaintiff's proffered interpretation of the statute – which leads them to fear its enforcement against their intended conduct – is arguable or reasonable.

Accordingly, in order to determine whether Picard has standing, we must determine whether Picard intends to engage in a course of conduct protected by the First Amendment, but arguably proscribed by a statute, and whether there exists a credible threat of prosecution thereunder. The district court found, and the State does not dispute, that Picard's conduct – jury nullification advocacy that is not connected to any specific court, jury, or ongoing trial in the courthouse – is protected by the First Amendment.

But the State argues that Picard's intended conduct – jury nullification advocacy outside of a courthouse that is not connected to any specific court, jury, or ongoing trial in the courthouse – is not proscribed by NYPL § 215.50(7). At oral argument, the State again made clear its position that NYPL § 215.50(7) does not actually proscribe Picard's intended conduct. And the State is correct in pointing

out that the district court ultimately found, under its own construction of NYPL § 215.50(7), that Picard's conduct did not violate the statute.

But neither the opinion of the New York Attorney General nor any similar view expressed by the district court or by this Court as to whether NYPL § 215.50(7) proscribes Picard's conduct can provide meaningful protection to Picard. For one, it is unclear whether the local police or District Attorneys around New York State are even aware of the State's concessions as to NYPL § 215.50(7)'s inapplicability to circumstances like those presented by Picard's case. Even if the police or District Attorneys were aware of those concessions, moreover, constructions of New York statutes by the New York Attorney General or by federal courts do not bind the local police officers or county District Attorneys. To conclude that Picard lacks standing because his fear of possible arrest and prosecution under NYPL § 215.50(7) is based on an unreasonable interpretation of that statute applies an arid conception of "reasonableness," given that a police officer did in fact arrest him for violating it, and a District Attorney declined to prosecute him only because the arresting officer did not measure the distance between Picard and the courthouse. Moreover, as we have acknowledged, despite the Attorney General's strategic concessions in this case, there is "nothing

18

that prevents the State from changing its mind," as it is not "forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation." *Vt. Right to Life*, 221 F.3d at 383.

The State also argues for its own interpretation of the statute that would not cover Picard's intended conduct. In particular, the State argues that NYPL § 215.50(7) would not cover the flyers Picard gave to passersby because NYPL § 215.50(7) applies only to an individual who "calls aloud, shouts, [or] holds or displays placards or signs containing written or printed matter." The State also argues that Picard's generic jury nullification advocacy – which is not directed at a specific court, jury, or ongoing trial – is not covered by NYPL § 215.50(7) because that statute proscribes only expressive activity "concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial."

It is of course possible that an interpretation that reads "placards or signs containing written or printed matter[] concerning the conduct of a trial" to cover Picard's "Jury Info" sign or jury nullification flyers may be less persuasive than the State's proffered interpretation, but such an interpretation is not outside the

19

realm of the "arguable." Even if the jury nullification flyers are not considered "placards or signs" and even if the "Jury Info" sign Picard held did not directly concern the conduct of a trial, Picard's use of both the sign and the flyers is "arguably" proscribed by the statute. Similarly, interpreting Picard's message regarding jury nullification to apply to the "conduct of a trial being held in such courthouse" is at the very least plausible, since his advocacy would apply to any trial then being held in the courthouse, even assuming arguendo that the State's interpretation that would require a message regarding a *specific* trial is more persuasive.

It is also notable that NYPL § 215.50(7) does not require *knowledge* that a trial is in fact being held in the courthouse. If the statute does cover advocacy not limited to a particular trial, Picard's conduct would be proscribed by the statute if a trial happened to be in progress at the same time – which would often be the case in many larger courthouses – whether or not he actually *knew* the trial was happening. Given that NYPL § 215.50(7) does not have a knowledge requirement, Picard should not have to allege, in order to have standing, that, when he was engaged in the conduct for which he was arrested, a jury trial was in fact taking

place in the Bronx courthouse. Accordingly, we find that Picard's conduct is "arguably proscribed" by NYPL § 215.50(7).

The standing inquiry does not end there. We must also determine whether a credible threat of future prosecution exists. It may well be the case that if Picard were to engage in the same course of conduct and then be arrested by a police officer unaware of the State's interpretation of the statute, Picard would be able to obtain a dismissal under that interpretation once the State stepped in to give its position. But it gives no comfort to Picard that he must face the possibility of arrest and a threatened prosecution *again* in order to engage in conduct that the State already concedes is protected by the First Amendment. Put plainly, Picard should not have to be arrested again in order to have standing to challenge the statute.

Indeed, perhaps the most significant piece of evidence in Picard's favor – and what makes Picard's case stand out from other pre-enforcement challenges – is that he has *already* been arrested for his jury nullification advocacy prior to initiating this lawsuit. Moreover, Picard escaped prosecution not because the District Attorney concluded that the statute did not apply to his conduct, but only because the arresting officer failed to measure the distance between where

21

Picard was standing and the courthouse, a factual ground that would not prevent his arrest in the future should he engage in this conduct in New York again, and his possible prosecution if the officer bothered to measure his precise distance from the courthouse. Picard also alleges in his complaint that he would again engage in the same course of conduct – general jury nullification advocacy outside New York courthouses – if it were not for the statute. It is entirely reasonable for Picard to fear that he would be arrested again if he engages in the same conduct within 200 feet of a New York courthouse. The facts of Picard's prior arrest illustrate the very reasons he – or someone in his position – would fear arrest or prosecution under NYPL § 215.50(7) in the future.

Because Picard has sufficiently demonstrated an intention to engage in a course of conduct implicated by the First Amendment but arguably proscribed by a statute, and because there exists a credible threat of prosecution, we find that Picard has sufficiently established injury in fact. Accordingly, we conclude that Picard has standing to challenge NYPL § 215.50(7).

### B. Facial or As-Applied Injunction

The State next argues that even if Picard does have standing, the district court exceeded its discretion when it issued an injunction that facially invalidated

22

NYPL § 215.50(7) rather than invalidating it solely as applied to Picard's conduct. The State asserts that the "appropriate remedy would have been a judgment and injunction prohibiting the statute's application to [Picard's] activity." Appellant's Br. 35.

Both the Supreme Court and this Circuit have recognized that "[a]lthough facial challenges are generally disfavored, they are more readily accepted in the First Amendment context." *Beal v. Stern*, 184 F.3d 117, 125 (2d Cir. 1999); *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988). Generally, "[t]o succeed in a typical facial attack, [a plaintiff] would have to establish 'that no set of circumstances exists under which [the challenged statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations omitted).[2] An as-applied challenge, by contrast,

---

[2] The *Stevens* Court went on to note: "In the First Amendment context, however, . . . a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." 559 U.S. at 473 (quotation marks and citation omitted). Picard has not attempted to demonstrate that NYPL § 215.50(7) is *overbroad*, in that its unconstitutional applications are unacceptably numerous in comparison with its legitimate applications, relying instead on a pure facial unconstitutionality argument. *See* Appellant's Br. 50 (arguing that the "problem is not just that the statute 'reaches too far' with respect to Picard, but rather that it has no plainly legitimate sweep. The only way to remedy that violation is to facially invalidate the Act.").

23

"requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).

Here, the State does not argue that the issuance of an injunction against the enforcement of NYPL § 215.50(7) as applied to Picard's conduct would be in error. Indeed, the State concedes that the "First Amendment protects Picard's generalized, nondisruptive jury-nullification advocacy." Appellant's Br. 49. The State does not argue that criminalizing Picard's conduct, which takes the form of "general advocacy unconnected to any specific trial, effected through leafletting rather than more overt and disruptive forms of communication," Appellant's Br. 21, would advance a compelling state interest, because Picard's conduct, as so defined, does not pose a significant threat to the integrity of court proceedings being conducted inside the courthouse. And at oral argument on appeal, the State conceded that it was not defending the constitutionality of the application of NYPL § 215.50(7) to Picard's conduct under the First Amendment. The State further agreed that "were Mr. Picard's advocacy to fall under the statute, it would be protected" and that if a case involving conduct like Picard's were

24

prosecuted, that prosecution would be unconstitutional. Oral Argument at 4:06-4:12.

Thus, putting aside the standing argument we have rejected, the State concedes that, on the merits, enforcement of NYPL § 215.50(7) against Picard's conduct would be unconstitutional, and offers no reason why the district court should not have issued an injunction barring enforcement of NYPL § 215.50(7) against conduct such as Picard's. We agree that an injunction prohibiting the enforcement of NYPL § 215.50(7) as applied to Picard's conduct is warranted in order to assure that Picard's constitutionally-protected conduct is not chilled by his reasonable fear of future arrest and prosecution.

The State does, however, challenge the district court's injunction insofar as it prohibits the enforcement of NYPL § 215.50(7) in all circumstances. Because we conclude that NYPL § 215.50(7) can likely be found to further a compelling state interest in at least some circumstances, we vacate the district court's facial injunction and remand to the district court to issue a narrower injunction that bars enforcement of NYPL § 215.50(7) only as applied to conduct such as Picard's.

The State's appeal presents a challenge to the district court's conclusion that NYPL § 215.50(7) facially violates the First Amendment of the United States Constitution. The statute regulates speech on public streets and sidewalks, which are traditional public fora and therefore occupy a "special position in terms of First Amendment protection." *Boos v. Barry*, 485 U.S. 312, 318 (1988), quoting *United States v. Grace*, 461 U.S. 171, 180 (1983).[3] The Supreme Court has held that a regulation is subject to strict scrutiny when it regulates speech in a public forum on the basis of its content. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). A regulation is content-based if it applies to speech "because of the topic discussed or the idea or message expressed," *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), or in other words, if the regulation has a content-based purpose or justification. *But see City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1473 (2022) (noting that "restrictions on speech may require

---

[3] We note that in *Grace*, the Supreme Court struck down a statute that prohibited "display[ing] [in the Supreme Court building or on its grounds] any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement." 461 U.S. at 175. That statute, unlike NYPL § 215.50(7), was not limited to speech concerning the conduct of proceedings inside the courthouse or calling for any specific action by the Court in connection with those proceedings, and instead effectively banned any speech taking the form of banners, flags, or the like.

some evaluation of the speech and nonetheless remain content neutral"). Content-based regulations are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

NYPL § 215.50(7) is a content-based regulation on speech. It explicitly prohibits demonstrations or protests concerning the conduct of a trial being held in the courthouse, but does not prohibit similar demonstrations regarding other subjects. The statute would, for example, prohibit a demonstration outside a courthouse urging jurors to convict a defendant in a high-profile trial taking place in the courthouse, but would not prohibit, for example, an anti-war protest or a rally supporting a mayoral candidate, unconnected to any courts, trials, or jurors, outside that same courthouse. Because NYPL § 215.50(7) is a content-based regulation of speech, in order for it to survive scrutiny, the State must prove that it is narrowly tailored to serve a compelling state interest.

The parties dispute whether NYPL § 215.50(7) is thus narrowly tailored. In urging us to vacate the district court's facial permanent injunction, the State argues that the injunction "precludes the State from enforcing [NYPL] § 215.50(7) in situations that even the [district] court itself acknowledged would serve a

27

compelling state interest in protecting the 'integrity of the judicial process.'"

Appellant's Br. 36.

The Supreme Court has acknowledged that "[t]here can be no question that a State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create." *Cox v. Louisiana*, 379 U.S. 559, 562 (1965). In upholding the facial validity of a state statute prohibiting "picket[ing] or parad[ing] in or near" a courthouse with the intent to obstruct justice or influence judges, jurors or witnesses,[4] the Court went on to observe:

> [I]t is of the utmost importance that the administration of justice be absolutely fair and orderly. . . . [T]he unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional

---

[4] Such statutes are not uncommon. The Louisiana statute at issue in *Cox* is virtually identical to a federal statute, 18 U.S.C. § 1507. For examples of similar state statutes, *see*, *e.g.*, Cal. Penal Code § 169 (statute prohibiting, among other things, picketing or parading in or a near a courthouse with intent to obstruct or interfere with the administration of justice or to influence a judge or juror); Mass. Gen. Laws ch. 268, § 13A (similar); Miss. Code Ann. § 97-9-67 (similar); Mo. Rev. Stat. § 575.250(1) (statute prohibiting disrupting or disturbing a judicial proceeding by, among other things, shouting or holding signs concerning the conduct of the judicial proceeding or calling for specified actions from a judge or juror in the proceeding); N.C. Gen. Stat. § 14-225.1 (similar to California statute); 18 Pa. Cons. Stat. § 5102 (similar to California statute); Utah Code Ann. § 76-8-302 (statute prohibiting, among other things, picketing or parading near a courthouse with intent to affect the outcome of a case pending before a state court); Wash. Rev. Code § 9.27.015 (similar to California statute).

28

democracy. . . . A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.

*Id.* The Supreme Court has also recognized the "'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected judges.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015), quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009).

The district court itself recognized that NYPL § 215.50(7) "seeks to protect the integrity of the judicial process by shielding trial participants, including jurors and witnesses, from undue influence during their engagement in trials," which "promotes the rule of law and the legitimate functioning of the justice system." *Picard*, 475 F. Supp. 3d at 204. The district court also noted that the statute "promotes the duty of witnesses to tell the truth and of jurors to follow a judge's instructions on the law and return a verdict based on the evidence received in the courtroom, all without regard to public opinion or influence." *Id.* at 206. On that basis, the district court determined that NYPL § 215.50(7) is "directed towards a compelling state interest." *Id.* at 204.

We agree that NYPL § 215.50(7) is directed towards a compelling state interest. And in light of that compelling interest, it cannot be said that there is no set of circumstances in which the application of NYPL § 215.50(7) would be constitutional. Whatever else it may arguably encompass, the statute plainly addresses conduct – demonstrations in close proximity to a courthouse, featuring loud or intrusive behavior addressed to particular trials taking place there – that can easily be seen as likely to affect the administration of justice. The State would clearly have a compelling interest, for example, in prohibiting protests outside a courthouse featuring amplified calls for the jurors to reach a particular verdict in an ongoing trial in that courthouse that are audible inside the courtroom.

Nor do we agree with Picard that NYPL § 215.50(7) is not narrowly tailored because it is not limited to such highly intrusive or disruptive proceedings. Quiet protests can be as intimidating as loud ones, and demonstrations that address their critiques directly to judges and jurors in the immediate vicinity of a courthouse inherently direct the attention of decision-makers in the judicial process to factors from which we strive to insulate them, such as the pressure of public opinion, or factual claims beyond the evidence and argument presented in the courtroom.

30

Further, we respectfully disagree with the observation of the district court that "escort[ing]" jurors and witnesses "to and from the courthouse" would obviate the problems that NYPL § 215.50(7) addresses. 475 F. Supp. 3d at 206. While such a procedure (which the district court recognized would impose "a not inconsiderable burden on the court system," *id*.) might prevent physical interference with the jurors and witnesses, it would certainly not eliminate – and may even exacerbate – the impression that jurors or witnesses are in need of protection from a potentially hostile public.

*Cox* itself strongly suggests that a statute of this kind – even without an intent requirement – is not facially unconstitutional and may have legitimate applications in particular circumstances. The statute at issue there prohibited parading and picketing in or near a courthouse "with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty." *Cox*, 379 U.S. at 560, quoting La. Rev. Stat. Ann. § 14:401 (Cum. Supp. 1962). The Court found the statute facially constitutional without an inquiry into whether the statute could have been drafted more narrowly. NYPL § 215.50(7) is arguably distinguishable from the statute found facially constitutional in *Cox*

31

because the New York statute is not expressly limited to conduct that is intended to interfere with the administration of justice or to influence a judge, juror, or witness. Instead, it is limited to demonstrations of a sort that, based on the form taken by the speech and its content, are likely to have such an effect.[5] In either case, however, the principal focus of any prosecution would be on the content of the speech and the actions of the speakers, from which an intent to obstruct or influence, if required, would ordinarily have to be inferred.

*Cox*, of course, predated recent Supreme Court doctrine applying more stringent First Amendment scrutiny to "content-based" restrictions on speech (as opposed to more narrowly defined "viewpoint-based" restrictions). But to the extent that the standard in decisions like *Boos* and *Reed* may be thought to call the

---

[5] The partial dissent notes the district court's observation that NYPL § 215.50(7) does not state that the "prohibited expression must directly tend to interrupt court proceedings." Concurring and Dissenting Op. of Judge Newman at 8, quoting *Picard*, 475 F. Supp. 3d at 206. We do not disagree that NYPL § 215.50(7) does not explicitly limit the prohibited expression to that which directly tends to interrupt court proceedings. But the kind of speech NYPL § 215.50(7) does target – speech "concerning the conduct of a trial being held in such courthouse or the character of the court or jury engaged in such trial or calling for or demanding any specified action or determination by such court or jury in connection with such trial," NYPL § 215.50(7) – is the kind of speech, based on its form and content, that may very well have such an effect because it is speech that seeks to have an influence on a specific court, jury, or trial.

reasoning of *Cox* into question, it is for the Supreme Court, and not for us, to decide if and when its precedential force has been undermined by those cases. *See Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("It is this Court's prerogative alone to overrule one of its precedents. . . . Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.") (quotation marks, citations, and brackets omitted). As the Supreme Court recognized in *Cox*, courthouses present special problems, which justify the adoption of "safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." 379 U.S. at 562. To the extent that *Cox* is in tension with later Supreme Court cases addressing "content-based" time, place, and manner restrictions on speech, the courthouse context might well be found to distinguish those cases.

The Supreme Court's decision in *Burson v. Freeman*, 504 U.S. 191 (1992), which upheld a restriction on core First Amendment activity in a particularly sensitive location, supports such a distinction. The Court there upheld a prohibition on electioneering activity in the immediate vicinity of polling places. We respectfully disagree with the district court's distinction of *Burson* on the

ground that in that case there was a "widespread and time-tested consensus" on the need for "restricted zones" to "prevent[] voter intimidation and election fraud," 475 F. Supp. 3d at 207, quoting *Burson*, 504 U.S. at 206, which the district court thought was lacking here. As noted above,[6] many states and the United States have statutes restricting protest activity around courthouses precisely because of the need to protect the administration of justice from outside influence and intimidation.

Although we are doubtful that any facial challenge to the constitutionality of NYPL § 215.50(7) could succeed, today we reject only the specific arguments for facial unconstitutionality raised by Picard. The Supreme Court has not had occasion since *Cox* to consider the effect of its recent jurisprudence applying strict scrutiny to time, place, and manner restrictions that are not content-neutral to statutes restricting courthouse-adjacent demonstrations addressed to cases being heard in the courthouse. But there is at least a plausible argument that a statute that imposes a geographic restriction on protests directed at cases being tried in those courthouses, while not restricting demonstrations on other subjects in the same area, is indeed narrowly tailored because the compelling interest that

_____

[6] *See* note 4, *supra*.

34

justifies the restriction is triggered by the content of the speech. As with the prohibition on electioneering near polling places, the compelling justification does not warrant limiting all speech near courthouses or restricting the particular type of speech at issue in all public fora, but it does arguably justify limiting particular forms of speech in the particular location.

Other questions too may be raised concerning the narrow tailoring of the statute, such as, for example, whether the statute's 200-foot buffer zone around a given courthouse is more restrictive than is reasonably necessary to carry out the State's interest. But questions about the appropriate size of the buffer zone have not been litigated before this Court or the district court. We do not have the benefit of a detailed factual record to help us determine the needs of a courthouse – as opposed to an abortion clinic or polling place, sites often subjected to similar statutes or injunctions regulating speech in specified buffer zones – for a buffer zone of a particular size. *Cf. Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 775-76 (1994) (vacating injunction prohibiting antiabortion protestors from protesting within 300 feet of the residences of abortion clinic staff, where an unspecified smaller buffer zone would suffice, based on the factual record before the Court). Instead, what we have before us is a sparse factual record involving a single

advocate engaging in conduct that the State has conceded is constitutionally protected and asserts is not even covered by the statute.

Even if other challenges to the statute's facial constitutionality could have merit, the lack of factual development here makes clear that the district court erred by striking down § 215.50(7) altogether. Any question about whether the application of NYPL § 215.50(7) to more intrusive or disruptive conduct than that engaged in by Picard would be constitutional is entirely hypothetical in the case presented to us on appeal. We see no need to delve into such questions in a case that does not present them in order to decide whether a more narrowly drawn statute could surgically identify conduct that may be constitutionally restricted without impinging on other conduct that is constitutionally protected.

Because the State concedes that the application of NYPL § 215.50(7) to Picard's conduct would not serve a compelling state interest and would therefore violate the First Amendment, there is no need here to decide questions about the statute's other possible applications. An injunction prohibiting the application of NYPL § 215.50(7) in the circumstances presented by Picard's case – in which a single individual advocated for what he contends are the correct principles of the legal system, unconnected to any specific trial and effected through non-intrusive

and non-disruptive leafletting rather than more aggressive, disruptive, or targeted forms of communication – would suffice to vindicate Picard's First Amendment right to advocate his point of view regarding jury nullification and to engage in the conduct in which he has engaged in the past and intends to continue in the future. Picard himself has no concrete interest in litigating the constitutional status of raucous demonstrations demanding particular decisions by judges and jurors in a pending proceeding at various specific distances from the courthouse where such proceedings are taking place, and any attempt to assess the proper parameters of a statute prohibiting such conduct would be entirely hypothetical in the context of this lawsuit.

The partial dissent asserts that we are "relying on the branch of the facial invalidity doctrine that rejects such a challenge only if 'no set of circumstances exists under which the Act would be valid," and ignoring the First Amendment overbreadth doctrine which holds a statute facially invalid "if it prohibits a substantial amount of protected speech." Concurring and Dissenting Op. of Judge Newman at 10 (citations and quotation marks omitted). But that is incorrect. While we have pointed out that there are at least some circumstances in which the application of NYPL § 215.50(7) would be constitutional, our holding is

37

not premised on a finding that Picard failed to establish that there is no set of circumstances in which the application of NYPL § 215.50(7) would be constitutional. Rather, our holding is premised on the conclusion that Picard has failed to establish that NYPL § 215.50(7) is facially unconstitutional and that we lack a developed factual record to determine whether NYPL § 215.50(7) might be constitutional or unconstitutional in factual circumstances different from those posed by Picard's conduct.

As the Supreme Court has recognized, "[g]enerally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006). For that reason, courts "prefer . . . to enjoin only the unconstitutional applications of a statute while leaving other applications in force." *Id.* at 328-29. And because the State concedes that the statute cannot be constitutionally applied to Picard's conduct, we need only follow "'the normal rule that partial, rather than facial, invalidation is the required course' and leave for another day [a facial] challenge to the statute." *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 105 (2d Cir. 2003), quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985). The broader injunction entered by the district court, which would prohibit the

38

enforcement of NYPL § 215.50(7) in any circumstances, was therefore entered in error.[7]

## CONCLUSION

For the foregoing reasons, we **VACATE** the August 14, 2020 judgment of the district court and **REMAND** to the district court to craft a narrower injunction prohibiting the application of NYPL § 215.50(7) only in the circumstances presented by Picard's conduct in this case.

---

[7] In the alternative, the State urges us to certify the question of whether NYPL § 215.50(7) applies to Picard's jury nullification advocacy to the New York Court of Appeals. Because the State concedes that application of NYPL § 215.50(7) to Picard's conduct would be unconstitutional, we see no need to ask the New York Court of Appeals to address a question that is not dispositive of the parties' rights and therefore decline to certify the question to that Court. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 962 F.3d 86, 93 (2d Cir. 2020) (explaining the standard for certification to the state's highest court).

Jon O. Newman, *Circuit Judge*, concurring in part and dissenting in part:

New York Penal Law § 215.50(7) ("subsection (7)") punishes a person who "[o]n . . . a public street or sidewalk within . . . two hundred feet of . . . a courthouse . . . calls aloud . . . or displays . . . signs containing written . . . matter, concerning the conduct of a trial being held in such courthouse . . . ." I agree with the majority that the Plaintiff-Appellant Michael Picard has standing to challenge the constitutionality of subsection (7). I also agree that subsection (7) is unconstitutional as applied to Picard.

Unlike the majority, however, I would rule that subsection (7) is also unconstitutional on its face, as the District Court ruled, *Picard v. Clark*, 475 F. Supp. 3d 198, 201 (S.D.N.Y. 2020). Subsection (7) violates the First Amendment because it is overbroad in prohibiting speech entitled to First Amendment protection and overbroad in its geographic scope. Furthermore, even as to Picard's as-applied challenge, which the majority upholds, I believe that the majority has provided the District Court with insufficient guidance as to the appropriate remedy on remand.

I therefore concur in part, but respectfully dissent in part.

1

I. Standing

The State argues that Picard lacks standing "to maintain a First Amendment challenge to" subsection (7). Br. for Magliano at 19. This contention makes no distinction between standing to make an as-applied challenge and standing to make a facial challenge. However, the State subsequently makes clear that it is challenging Picard's standing to make not only an as-applied challenge but also a facial challenge: The State specifically asserts: "[T]he district court held that Picard had standing to facially challenge the law under the First Amendment . . . . That standing ruling was in error." *Id*. at 20.

The majority rules that Picard has standing "to challenge" subsection (7), Maj. Op. at 22, without distinguishing between standing to challenge the subsection as applied and standing to challenge it facially. I agree with the standing ruling, but would explicitly reject the State's specific claim that Picard lacks standing to make a facial challenge, rather than leave that rejection merely implicit in the majority opinion. I am unaware of any decision that has recognized a plaintiff's standing to make an as-applied challenge to a statute alleged to violate the First Amendment and then denied standing to make a facial challenge. Once a plaintiff has standing to make any First Amendment challenge to a statute, the

scope of the challenge is a merits issue. "[N]o general categorical line bars a court from making broader pronouncements of invalidity in properly as-applied cases." *Citizens United v. Federal Elections Commission*, 558 U.S. 310, 331 (2010) (internal quotation marks and citation omitted).

When the Supreme Court has rejected a facial challenge to a statute challenged on First Amendment grounds, it has done so on the merits, not for lack of standing. See, *e.g.*, *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008). And Justices who, in dissent, would have sustained a facial challenge to such a statute have not paused to consider whether the plaintiff, subject to the statute, had standing to facially challenge it. *See Brown v. Entertainment Merchants Assn.*, 564 U.S. 786, 821 (2011) (Thomas, J., dissenting); *id*. at 840 (Breyer, J., dissenting).

I also note that this is not a typical pre-enforcement challenge. In the leading pre-enforcement decisions of the Supreme Court, the plaintiff had not been arrested for violating the challenged statute. *See, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014);[1] *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *Steffel v. Thompson*, 415 U.S. 452 (1974). Picard, however, has been arrested.

---

[1] In *Susan B. Anthony*, where a state prohibition on certain campaign statements was challenged, an administrative complaint had to be filed before a prosecution could be brought, and an administrative body had voted to issue the required complaint. However, the matter never proceeded any further. *See* 573 U.S. at 154-55.

True, he wants protection against being arrested again in the future for continuing to violate § 215.50(7), but having been arrested, he is making a post-arrest challenge to that future arrest.[2]

In any event, because of his acknowledged standing to make an as-applied challenge and for the further reason that it is undisputed that he intends to repeat his conduct, Picard has standing to make a facial challenge whether that challenge is called "pre-" or "post-" enforcement.

II. The Merits

Picard wishes to advocate and distribute literature advocating jury nullification.[3] His message is not focused on any particular trial.

I agree with the majority that the challenged provision violates the First Amendment as applied to Picard. Whether his facial challenge (1) is available for

---

[2] The majority observes that "what makes Picard's case stand out from other pre-enforcement challenges is that he has *already* been arrested for his nullification advocacy prior to initiating this lawsuit." Maj. Op. at 21 (emphasis in original; dash omitted). That arrest does more than make his case "stand out" from other pre-enforcement challenges, it makes his case a post-enforcement challenge.

[3] Picard held a sign stating "Jury Info" and distributed pamphlets stating on one side "No Victim? No Crime. Google Jury Nullification" and on the other side "'One has a moral responsibility to disobey unjust laws'—Martin Luther King Jr." *Picard*, 475 F. Supp. 3d at 201. The phrase "Jury Info" appears in pamphlets advocating jury nullification distributed by the Fully Informed Jury Association. *See United States v. Heicklen*, 858 F. Supp. 2d 256, 260 (S.D.N.Y. 2012). The Association favors jury nullification. *See* "Fully Informed Jury Association," en.wikipedia.org/wiki/Fully_Informed_Jury_Association.

decision on the record in this case and, if so, (2) should succeed on the merits both require further consideration.

The majority's basis for its resolution of these two issues is not entirely clear. Initially, the majority makes a merits rejection of Picard's facial challenge:

> "Because we conclude that NYPL § 215.50(7) can likely be found to further a compelling state interest in at least some circumstances, we vacate the district court's facial injunction and remand to the district court to issue a narrower injunction that bars enforcement of NYPL § 215.50(7) only as applied to conduct such as Picard's."

Maj. op. at 25.

Later, however, the majority says that Picard's facial challenge is not properly before us for lack of an adequate record:

> "We do not have the benefit of a detailed factual record to help us determine the needs of a courthouse . . . for a buffer zone of a particular size."

*Id*. at 34. This point is then made more forcefully:

> "[T[he lack of factual development here makes clear that the district court erred by striking down the entire statute."

*Id*. at 35.

Of course, a court can rule that a record is insufficient to make a merits ruling and then express, in apparent dicta, that the claim fails on the merits, although it is odd to see these two points made in reverse order, as the majority

5

does. In my view, the record does not lack information needed for a merits ruling on Picard's facial challenge and subdivision (7) is facially invalid.

What is clear on this record is that subsection (7) punishes anyone who "[o]n . . . a public street or sidewalk within . . . two hundred feet of . . . a courthouse . . . calls aloud . . . or displays . . . signs containing written . . . matter, concerning the conduct of a trial being held in such courthouse . . . ." It is also clear, indeed undisputed, that Picard was arrested for violating subsection (7) and detained in police custody for ten hours. It is also clear that subsection (7) prohibits speech occurring on a sidewalk within 200 feet of a courthouse if the speech concerns an ongoing trial in that courthouse. These circumstances suffice for me to uphold Picard's facial challenge because subsection (7) is overbroad.[4]

---

[4] The majority declines to consider whether subsection (7) is overbroad in the respects I point out below because, it asserts, Picard did not defend on appeal the District Court's judgment by arguing overbreadth. Maj. Op. at 34 ("Questions of that nature have not been litigated before us."). However, he contended that the statute "is substantially overbroad," Br. for Picard at 10, and "is not limited to expression that is likely to *disrupt* ongoing trial proceedings," *id*. at 37 (emphasis added). My first overbreadth argument is that subsection (7) is not limited to expression likely to unduly *influence* trial proceedings. Although Picard's argument is not precisely the overbreadth argument I am making, it is so close to my argument that it would be ignoring reality not to consider the issue of overbreadth. In any event, "[o]nce a federal claim is properly presented, . . . parties are not limited to the precise arguments in support of that claim," *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 379 (1995) (internal quotation marks omitted), especially in First Amendment cases, *see Citizens United*, 558 U.S. at 330.

*The linguistic scope of subsection (7) is overbroad*. I start with several well recognized principles: restrictions of speech based on content are subject to the most exacting scrutiny, *see Boos v. Barry*, 485 U.S. 312, 321 (1988); a content-based restriction, which subsection (7) undisputedly is, must be narrowly tailored to serve a compelling interest, *see Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015); "it is the rare case in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest," *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015) (internal quotation marks omitted); such a restriction must be "the least restrictive means among available, effective alternatives," *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004); "[s]peech in public areas is at its most protected on public sidewalks," *Schenck v. Pro-Choice Network*, 519 U.S. 357, 377 (1997); public sidewalks, including those surrounding a court, are public fora, *United States v. Grace*, 461 U.S. 171, 183 (1983). It is also well recognized that the State has a compelling interest in "assur[ing] that the administration of justice at all stages is free from outside control and influences," *Cox v. Louisiana*, 379 U.S. 559, 562 (1965), and "protecting the integrity of the judiciary," *Williams-Yulee*, 575 U.S. at 445.

Subsection (7) prohibits within the vicinity of a courthouse speech "concerning the conduct of a trial being held in such courthouse." In the District

7

Court, the State, perhaps recognizing the broad sweep of subsection (7), sought to conform it to First Amendment limitations by offering a narrowing interpretation of the entire statute containing subsection (7): "Properly understood, the Act was crafted to restrict certain protest activity in the immediate vicinity of a State courthouse that the Legislature deemed *likely to disrupt or unduly influence a pending trial or proceeding*." Pretrial Memorandum of Defendant Magliano at 2 (emphasis added). Judge Cote succinctly rejected the State's claim. "The defendants, however, are mistaken insofar as they argue that the Act only criminalizes expression that is likely to disrupt ongoing proceedings. The statute contains no such limitation. Unlike other provisions of § 215.50, § 50(7) does not state that the prohibited expression must directly tend to interrupt court proceedings. *See* N.Y. Penal Law §§ 50(1), 50(2)." *Picard*, 475 F. Supp. 3d at 206.

The State's attempted narrowing interpretation not only mischaracterized the Act, it ironically identified an alternative that would serve the State's compelling interest and meet First Amendment limitations. A statute prohibiting oral or written expressions likely to come to the attention of jurors, because made in close proximity to a courthouse, and likely to unduly influence jurors or at least

risking such undue influence, because of the message communicated, is an available alternative to subsection (7).

Subsection (7), however, broadly prohibits expressions far beyond such a limited alternative. Critical statements such as "the trials in this courthouse are generally unfair" and favorable statements such as "the trials in this courthouse are generally fair" would both be statements "*concerning* the conduct of a trial being held in such courthouse." But prohibiting them, as subsection (7) does, would not serve the State's compelling interest in avoiding influencing jurors. The wording of subsection (7) demonstrates that it is overbroad.[5]

The majority enlists *Cox* to reject a facial challenge to subsection (7).[6] "*Cox* itself strongly suggests that a statute of this kind is not facially unconstitutional and may have legitimate applications in particular circumstances." Maj. Op. at 30.

---

[5] The majority says that I am "incorrect," Maj. Op. at 37, in contending that the majority has ignored the second of the two branches of First Amendment jurisprudence for invalidating a statute: overbreadth, in addition to lack of any valid application. The majority endeavors to offer two reasons in an attempt to show that it has reckoned with overbreadth. First, they say that Picard has "failed to establish that NYPL § 215.50(7) is facially unconstitutional." Maj. Op. at 38. But Picard has done all he needs to do: he has quoted the terms of the statute, and those terms are overbroad because they prohibit a considerable amount of protected speech. Second, they say that we lack a factual record sufficient to determine whether subsection (7) "might be constitutional or unconstitutional in factual circumstances different from those posed by Picard's conduct." *Id*. But that is just another way of stating the first branch of First Amendment invalidity.

[6] *Cox* ultimately upheld an as-applied challenge because local officials had given permission for the sidewalk protest. *See* 379 U.S. at 568-72.

First, the majority is relying on the branch of the facial invalidity doctrine that rejects such a challenge only if "no set of circumstances exists under which the Act would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). But that reliance ignores the branch of the facial invalidity doctrine that upholds such a challenge where a statute is overbroad on First Amendment grounds. "According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). "There are two quite different ways in which a statute or ordinance may be considered invalid 'on its face'—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321 (2000).

Second, the statute upheld in *Cox* against a facial challenge was not of the "kind" exemplified by subsection (7), as the majority contends. The obvious distinction is that the statute in *Cox* prohibited parading and picketing near a courthouse "with the intent of . . . influencing any judge, juror, witness, or court

officer, in the discharge of his duty." *Cox,* 379 U.S. at 560. Subsection (7) has no element of intentionally influencing court personnel.

A less obvious distinction turns on the way the Supreme Court characterized the activity prohibited by the statute challenged in *Cox*. That statute prohibited "picketing and parading" at specific locations, including near courthouses. 379 U.S. at 562. The Supreme Court's opinion in *Cox* called such activity "conduct," *id*. at 564, and distinguished such conduct from speech. "We deal in this case not with free speech alone, but with expression mixed with particular conduct." *Id.* "[I]t has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part . . . carried out by means of language, either spoken, written, or printed." *Id.* at 563. *Cox* is not authority for rejecting a First Amendment facial challenge to a statute prohibiting speech alone, that is, speech that is not "mixed with particular conduct" such as picketing and parading. Subsection (7) prohibits speech "concerning the conduct of a trial," and it is overbroad because it is not limited to prohibiting speech intended to or at least likely to unduly influence jurors or court personnel or proceedings.

*The geographic scope of subsection (7) is overbroad.* Subsection (7) is overbroad in that it creates a 200-foot zone around a courthouse in which verbal or written speech concerning the conduct of trials may not be expressed. A distance of 200 feet is 67 yards, two-thirds the length of a football field. The subsection forces a person delivering a message about ongoing court proceedings to stand away from potential listeners and readers at a location equivalent to that of a person standing on a 33-yard line whose spoken words could not be heard in the far endzone or whose writings displayed at that location could not be read in that endzone. Keeping speakers that far away from potential listeners and readers renders the provision overbroad.

I recognize the state's compelling interest in protecting the integrity of court proceedings. I would not deem invalid a narrowly tailored prohibition of speech close enough to a courthouse to risk unduly influencing a proceeding occurring there. But 200 feet is farther than needed to serve the State's legitimate interest. Those expressing views about court proceedings are entitled to have their views heard and read in the vicinity of a courthouse, even though the State can bar

speech unduly influencing such proceedings expressed so close to the courthouse that their views can be easily heard or read.[7]

The majority rejects a facial challenge because "the statute plainly addresses conduct—demonstrations in *close* proximity to a courthouse, featuring *loud* or intrusive behavior addressed to particular trials taking place there—that can easily be seen as likely to affect the administration of justice." Maj. Op. at 29 (emphases added). I disagree with the emphasized characterizations. As for "close," the State had made no attempt to show or even claim that no distance less than 200 feet would fail to suffice to serve its compelling interest. As for "loud," the challenged subsection's punishment of a person who calls "aloud" is properly understood to mean no more than speaking in a normal voice, since another word in the same subsection already punishes a person who "shouts" about court proceedings within the 200-foot zone and another provision of the statute prohibits "noise or other disturbance, directly tending to interrupt a court's proceedings," § 215.50(2).

---

[7] The Supreme Court, in upholding, against a First Amendment challenge, a state statute prohibiting political activity within 100 feet of polling places, noted that "the campaign-free zone included sidewalks." *Burson v. Freeman*, 504 U.S. 191, 196 n.2 (1992). However, an important part of the Court's rationale for upholding the campaign-free zone around polling places, even including sidewalks, was that "because law enforcement officers generally are barred from the vicinity of the polls to avoid any appearance of coercion in the electoral process . . . many acts of interference would go undetected." *Id*. at 207. There is no similar absence of law enforcement or court security officers from the vicinity of courthouses.

Moreover, subsection (7) is unnecessary. Subsection (2) of section 215.50 and several other statutes[8] provide abundant protection for the State's compelling interest in protecting the judicial process. Perhaps that is why, as the Defendants informed the District Court, the entire section 215.50 has resulted in only four arrests in the past 14 years, including Picard's. *Picard*, 475 F. Supp. 3d at 207.[9]

III. The Remedy

The majority remands the case with an instruction to the District Court "to craft a narrower injunction prohibiting the application of NYPL § 215.50(7) only in the circumstances of Picard's conduct in this case." Maj. Op. at 37. I think further guidance is needed to enable the District Court to satisfy the requirements of Rule 65 of the Federal Rules of Civil Procedure. An order granting an injunction must "state its terms specifically," Fed. R. Civ. P. 65(d)(1)(B), and must "describe in reasonable detail . . . the act or acts restrained," *id*. 65(d)(1)(C).

---

[8] *See* N.Y. Penal Law § 215.25 ("A person is guilty of tampering with a juror in the first degree when, with intent to influence the outcome of an action or proceeding, he communicates with a juror in such action or proceeding, except as authorized by law."); N.Y. Penal Law § 215.23 (tampering with a juror in the second degree); N.Y. Penal Law § 215.13 (tampering with a witness in the first degree); N.Y. Penal Law § 195.05 (obstructing governmental administration in the second degree).

[9] Of the three arrests, prior to Picard's, for violating the statute, one was for refusing to be seated and remain quiet in a courtroom. Br. for Picard at 41 n.5. There is no claim that subsection 215.50(7) itself has ever resulted in an arrest prior to Picard's.

14

Although it is not our task to draft an injunction, the majority's language leaves it unclear what constitutes "Picard's conduct in this case." Is the conduct exactly what Picard was doing when arrested—holding the same sign and distributing the same literature, or is it uttering any words or distributing any literature advocating jury nullification, or is it uttering any words or distributing any literature outside a courthouse? As for location, is the conduct standing exactly where Picard stood when arrested, or any location within 200 feet of the courthouse near which he was arrested, or any location within 200 feet of any courthouse in New York State?

Perhaps the parties will assist the District Court by agreeing to the terms of an injunction. If not, there is a distinct risk that we will encounter these questions on a subsequent appeal.

* * * * *

For all the reasons stated above, I concur in part and respectfully dissent in part.