**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2037
_____

VICTORIA SCHRADER

v.

DISTRICT ATTORNEY OF YORK COUNTY;
ATTORNEY GENERAL OF PENNSYLVANIA

DISTRICT ATTORNEY OF YORK COUNTY,
                                          Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:21-cv-01559)
District Judge: Honorable Jennifer P. Wilson
_____

Argued January 23, 2023

Before: SHWARTZ, BIBAS, and FUENTES, *Circuit Judges*

(Filed: July 19, 2023)
_____

Sean E. Summers          **[ARGUED]**
SUMMERS NAGY LAW OFFICES
35 South Duke St.
York, PA 17401
    *Counsel for Appellant*

Aaron D. Martin          **[ARGUED]**
METTE EVANS & WOODSIDE
3401 North Front St.
P.O. Box 5950
Harrisburg, PA 17110
    *Counsel for Appellee*

Sean A. Kirkpatrick          **[ARGUED]**
OFFICE OF ATTORNEY GENERAL OF PENNSYLVANIA
Strawberry Square 15th Floor
Harrisburg, PA 17120
    *Counsel for Attorney General of Pennsylvania*

_____

OPINION OF THE COURT

_____

BIBAS, *Circuit Judge*.

Child-abuse information matters to both victims and the public. The government encourages victims to report abuse by keeping their information private. But the public has a strong interest in holding the government accountable for how it confronts this serious crime. So once this information enters the public domain, the government can rarely claw it back.

2

Victoria Schrader wants to use documents released by the government to criticize it for how it handled her grandson's life and untimely death. Yet she worries that Pennsylvania officials will use Pennsylvania law to punish her for doing so. Because the First Amendment protects her criticism, the District Court properly enjoined the officials from prosecuting her. But because one of her alleged injuries is too speculative, we will vacate the injunction with instructions to narrow it.

## I. INVESTIGATING A TODDLER'S DEATH

Dante Mullinix died when he was only two. (Because the District Court used Dante's full name throughout its opinion and order, and Dante is no longer with us, we will too.) Before he died, his aunt, Sarah Mercado, thought he had been in danger. So she filed a report with the York County Office of Children and Youth Services, imploring them to protect him. Her report led Youth Services to investigate Dante's welfare. But that investigation would not save him.

Tyree Bowie, who was dating Dante's mother, was charged with murdering him. In criminal discovery, Bowie got documents from the Youth Services investigation that were stored in a statewide database. He passed them along to Mercado, who believed he was innocent. Mercado wanted to advocate Bowie's innocence and blame Youth Services for failing to protect her nephew. So she started a Facebook group called "Justice for Dante" and posted some of the documents to the group. Bowie was eventually acquitted.

In the meantime, those posts caught the eye of York County District Attorney David Sunday. The DA charged Mercado with violating Pennsylvania's Child Protective Services Law.

The Law makes it a crime to "willfully release[ ] or permit[ ] the release of any information contained in the Statewide [child-abuse] database … to persons or agencies not permitted … to receive that information." 23 Pa. Cons. Stat. § 6349(b). The DA later dismissed the charge without prejudice.

Victoria Schrader, Dante's grandmother and Mercado's mother, shares Mercado's views. She wants to publish "documents that had been generated in the course of [Youth Services' investigation]," including the documents that Mercado has already posted on Facebook, to "further publicize [Youth Services'] failures and … [to] advoca[te] … Bowie's innocence." Compl. ¶¶ 12, 22, *Schrader v. Sunday*, 603 F. Supp. 3d 124 (M.D. Pa. 2022) (No. 1-21-cv-01559). But she fears that she too will be prosecuted if she does so.

So Schrader sued to enjoin the DA and Pennsylvania's Attorney General from prosecuting her. Invoking the First Amendment, she claims that the Law is unconstitutional both on its face and as applied to her.

The District Court agreed with the as-applied challenge, so it did not reach the facial one. *Schrader*, 603 F. Supp. 3d at 139 & n.9. After briefing, but without a hearing, it preliminarily enjoined the DA and Attorney General. *Id.* at 141. The injunction barred them from prosecuting Schrader for sharing any child-abuse documents "whether now in her possession or otherwise coming into her possession, concerning Dante." App. 34. The DA, but not the Attorney General, now appeals.

## II. WE LACK JURISDICTION OVER PART OF THIS APPEAL

We start with subject-matter jurisdiction, which we review de novo. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010). The District Court had statutory jurisdiction to hear Schrader's federal question under 28 U.S.C. §1331, and we have interlocutory jurisdiction to review preliminary-injunction appeals under §1292(a)(1). But we lack appellate jurisdiction to consider the Attorney General's claims, and the District Court lacked Article III jurisdiction to hear part of Schrader's case.

### A. We lack appellate jurisdiction over the Attorney General's challenge

The Attorney General did not appeal the injunction. Yet she has filed a brief as an appellee, challenging the District Court's subject-matter jurisdiction to enjoin her. But our jurisdiction is limited to "*appeals* from … [i]nterlocutory orders … granting … injunctions." 28 U.S.C. §1292(a) & (a)(1) (emphasis added). Because there is no appeal by the Attorney General, we lack jurisdiction over her challenge to the District Court's jurisdiction. *Petroleos Mexicanos Refinacion v. M/T King A (Ex-Tbilisi)*, 377 F.3d 329, 333 n.4 (3d Cir. 2004). She can press those claims below. *See* Fed. R. Civ. P. 12(h)(3).

### B. Schrader has standing for some (not all) of her claims

The DA did appeal. So we have appellate jurisdiction over his challenge to the injunction. But we still must confirm subject-matter jurisdiction. *Nesbit v. Gears Unltd., Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003). For that, the plaintiff must have

standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 105–07 (1983). And though Schrader has standing to seek to enjoin prosecution for sharing documents "now in her possession," she lacks standing to block prosecution for sharing documents "otherwise coming into her possession." App. 34.

For standing, a plaintiff must show that she has suffered "an injury in fact" that is caused by "the conduct complained of" and could be "redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (internal quotation marks omitted). Schrader claims that the DA is threatening to enforce the Law against her. To show an injury in fact in such a case, she must allege that (1) she intends to do something that is (2) arguably protected by the Constitution but (3) arguably barred by the Law, and that (4) the DA is credibly threatening to prosecute her under that Law. *Id.* at 158–59.

For the documents now in her possession, Schrader satisfies these four requirements. *First*, her intent to publish the Facebook documents is "specific" and not "conjectural or hypothetical." *Id.* at 158, 161 (internal quotation marks omitted). She wants to do almost exactly what Mercado has already done with them.

*Second*, by sharing the Facebook documents, Schrader intends to criticize the government. She certainly has a constitutional interest in doing that. *Id.* at 162; *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

*Third*, the Law might bar her from sharing the Facebook documents. Pennsylvania's Superior Court, in dictum, has

6

described the Law as "extend[ing] the duty of confidentiality to *all persons* who come into possession of protected information." *V.B.T. v. Fam. Servs. of W. Pa.*, 705 A.2d 1325, 1333 n.13 (Pa. Super. Ct. 1998) (emphasis added). The Facebook documents contain "information … in the Statewide [child-abuse] database." 23 Pa. Cons. Stat. § 6349(b). So by reposting them, Schrader would arguably "release[ ]" that information. *Id.* One definition of "release" is to "make available for publication or public showing; to publish." *Release* (def. II.7), *Oxford English Dictionary* (2d ed. 1989). The Law's arguable ban on doing that suffices for standing.

*Finally*, Schrader faces a credible threat of prosecution. "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Driehaus*, 573 U.S. at 164 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Mercado has already been prosecuted for posting the same documents to Facebook. That "prosecution … is ample demonstration" that Schrader's concern is credible. *Steffel*, 415 U.S. at 459. And though the DA has suggested that he would not prosecute Schrader for just sharing the Facebook documents, he has not disavowed that possibility. Thus, Schrader has "alleged a credible threat of enforcement." *Driehaus*, 573 U.S. at 165–67.

But for documents "otherwise coming into her possession," Schrader's alleged injury is hypothetical. She does not yet know about these other documents and their contents. She may never get them and may never share them. So the prospect of a prosecution is at best "speculative." *Younger v. Harris*, 401 U.S. 37, 42 (1971). Such speculative allegations are not enough to give federal courts jurisdiction to enjoin prosecution. *Lyons*,

7

461 U.S. at 105–07. Indeed, at oral argument, Schrader's counsel conceded that she now seeks to share only the Facebook documents. So we will vacate the District Court's injunction covering the other-documents claim.

In fearing prosecution if she shares the Facebook documents, Schrader is suffering an injury in fact. And she easily meets the other two requirements for standing. Her "credible threat of prosecution is traceable to the [DA's] enforcement of" the Law, and enjoining enforcement would redress that injury. *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 856 (3d Cir. 2022). So she has standing to seek to enjoin enforcing the Law against her posting the Facebook documents. We thus have jurisdiction to consider the DA's challenge to the preliminary injunction against him.

## III. NO HEARING WAS NEEDED

The DA starts with a procedural attack. He says the District Court should have held a hearing on the preliminary-injunction motion. True, a court can issue a preliminary injunction "only on notice to the [enjoined] party." Fed. R. Civ. P. 65(a)(1). But "notice" is different from a hearing. And we have "long … recognized that a preliminary injunction may issue … without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue." *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982) (per curiam). The DA points to no relevant factual issue left unresolved. Though he says he wanted to explain the stakes and why he needs the Law to investigate and prosecute child abuse, he filed briefs making those very points. He got the

8

notice he needed, and the court properly exercised its discretion to enjoin him without a hearing.

## IV. BECAUSE SCHRADER'S CONSTITUTIONAL CHALLENGE IS LIKELY TO SUCCEED, THE DISTRICT COURT RIGHTLY ENJOINED PROSECUTING HER

With those threshold arguments out of the way, we reach the merits. We review the court's factual findings for clear error, its legal conclusions de novo, and its ultimate grant of the injunction for abuse of discretion. *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 161 (3d Cir. 2018).

To get a preliminary injunction, Schrader must satisfy four factors: (1) she will likely succeed on the merits, (2) she will likely suffer irreparable injury without an injunction, (3) the balance of equities favors her, and (4) an injunction serves the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Because the government is the opposing party, the latter two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The battle here is over the merits. "In First Amendment cases the initial burden [of proof] is flipped." *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). For a preliminary injunction, as at trial, the government must prove constitutionality under whatever level of scrutiny applies to the speech restriction. *Id.*

Here, picking the right level of scrutiny is tricky. Two lines of precedent apply. Under one, we focus on whether the Law's restriction on speech is content-based. If it is, we apply strict scrutiny; if not, then intermediate scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471–

74 (2022). Under the other, we ask instead whether the Law punishes publishing lawfully obtained, truthful information of public concern. *See Bartnicki v. Vopper*, 532 U.S. 514, 526–28 (2001). If it does, the Law is invalid unless it serves "a need to further a state interest of the highest order." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979). We need not reconcile these two lines of precedent here because both point the same way: under either, Schrader is likely to win.

## A. Under the content-focused test, the Law is likely unconstitutional as applied here

Content-based laws are "those that target speech based on its communicative content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Some laws do that on their face by "regulat[ing] speech [based on its] particular subject matter." *Id.* Others "regulate[] speech by its function or purpose" as a "proxy" for its subject matter. *Id.*; *City of Austin*, 142 S. Ct. at 1474. But that "subtler" strategy cannot evade content-based scrutiny. *Id.* (both sources).

The Law is one such function-or-purpose statute. Though the Law regulates the information by its source, the source itself is defined by its subject matter. Recall that it punishes a "person who willfully releases … any information contained in the Statewide [child-abuse] database" to unauthorized persons. 23 Pa. Cons. Stat. §6349(b). By law, the Statewide database has twenty-three types of information about "child abuse." §§6331, 6336. So the Law "single[s] out [a] topic or subject matter for differential treatment": child abuse. *City of Austin*, 142 S. Ct. at 1472. Because the database is a "proxy" for subject matter, the Law is content-based. *See id.* at 1474.

10

Thus, the DA must satisfy strict scrutiny. A content-based law like this one is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

The DA fails to meet this daunting burden. True, the state generally has a "compelling interest in protecting its child-abuse information." *Pennsylvania v. Ritchie*, 480 U.S 39, 60 (1987). But the strength of those "privacy interests fade[s] once information already appears on the public record." *Fla. Star v. B.J.F.*, 491 U.S. 524, 532 n.7 (1989); *accord Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975). Mercado has already posted on Facebook the child-abuse documents that Schrader wants to share.

Even if the state still has a compelling interest, prosecuting Schrader for republishing Mercado's documents is not narrowly tailored to serve that interest. To narrowly tailor, the state must choose "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). But there are "available, effective alternatives" to prosecuting Schrader. Take these two:

First, there are protective orders. The DA could have gotten a protective order stopping Bowie from sharing the discovery documents *before* he did so. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31–37 (1984). Instead, the DA got a protective order only *after* Bowie had shared them. When "the government has failed to police itself in disseminating information," prosecuting someone who later publishes that

11

information "can hardly be said to be a narrowly tailored means of safeguarding" confidentiality. *Fla. Star*, 491 U.S. at 538.

Second, there are civil penalties. The Law could, for instance, authorize fines. Here, the DA "has offered little more than assertion and conjecture to support [his] claim that without criminal sanctions the objectives of [the Law] would be seriously undermined." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841 (1978).

The DA has not met his burden to explain away these two alternatives. Because the law is not narrowly tailored, the state may not apply it to stop or punish Schrader for publishing the Facebook documents. *See FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464, 476 (2007).

### B. Under the *Daily Mail* test, the Law is also likely unconstitutional as applied here

Another strand of First Amendment law also protects Schrader's intended speech: the *Daily Mail* test. If one "lawfully obtains truthful information about a matter of public significance[,] then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." 443 U.S. at 103. The *Daily Mail* test applies even when a content-neutral state law seeks to punish a publisher who is not part of the press. *Bartnicki*, 532 U.S. at 525–28 & n.8.

(Though the *Daily Mail* test fits oddly with our modern focus on content-based restrictions, its principle seems to date to the Founding. *See* Pa. Const. of 1790, art. IX, § VII (making truth a defense to "prosecutions for the publication of papers,

12

investigating the official conduct of officers, or men in a public capacity, or where the matter published is proper for public information"); Sedition Act, ch. 74, §§2, 3, 1 Stat. 596, 596–97 (1798) (making truth a defense to prosecutions for publishing "any false, scandalous and malicious writing or writings against the government of the United States"). And the Court has explained that true "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). So the test understandably stands apart from the content-focused analysis.)

*Daily Mail*'s test supports Schrader's right to speak. First, she got the Facebook documents lawfully: "Even assuming the Constitution permitted a State to proscribe *receipt* of information, [Pennsylvania] has not taken this step." *Fla. Star*, 491 U.S. at 536. Instead, the Law bans only *releasing* confidential child-abuse information. Second, the Facebook documents are undisputedly authentic. *Id.* And third, they are significant to the public: the government's investigation of child abuse, especially involving a child who ultimately died, is "a matter of paramount public import." *Id.* at 536–37; *see also Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 787–88 & n.6 (3d Cir. 2005).

Because Schrader meets the *Daily Mail* criteria, "punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order." *Fla. Star*, 491 U.S. at 541. And as explained earlier, the Law is not narrowly tailored as applied to Schrader. So under the *Daily Mail* test, the state cannot constitutionally use it to punish her.

13

### C. The other preliminary-injunction factors support relief too

The DA concedes that if the Law abridges the First Amendment, enforcing it against Schrader would irreparably injure her. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And though the public has a strong interest in protecting reports of child abuse, "privacy concerns give way when balanced against the [First Amendment] interest in publishing matters of public importance." *Bartnicki*, 532 U.S. at 533–34. The state could have prevented this information from entering the public domain, but it failed to do so. It cannot now use prosecution to fix its mistake. And "the enforcement of an unconstitutional law vindicates no public interest." *K.A. ex rel. Ayers v. Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013). So irreparable injury, the equities, and the public interest all favor relief.

The District Court properly balanced all the factors and tailored its relief to the party before it. It did not abuse its discretion by granting the preliminary injunction as far as it lets Schrader publish the Facebook documents.

### D. By enjoining the DA, we are not definitively interpreting the Law

We end with a note on statutory construction. As a federal court, we cannot "authoritatively … construe state legislation." *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369 (1971). And we look at the Law through the lens of the preliminary-injunction factors. We hold only that *if* the Law

14

applies to Schrader's speech (which is arguable), that application would likely be unconstitutional. And "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006). So we will tell the District Court to limit its injunction to protect Schrader's right to publish the Facebook documents.

The Second Circuit recently did something similar. It upheld an injunction barring a state from prosecuting a plaintiff for speaking in ways that would violate one reasonable reading of a state statute. *Picard v. Magliano*, 42 F.4th 89, 98–99, 102, 106–07 (2d Cir. 2022). That as-applied injunction would ensure that "[the plaintiff's] constitutionally-protected conduct is not chilled by his reasonable fear of future arrest and prosecution." *Id.* at 102. So too here. Enjoining the DA from prosecuting Schrader resolves her as-applied challenge, avoids authoritatively construing the law, and limits the solution to the problem.

\* \* \* \* \*

Victoria Schrader wants answers for her grandson's death. In search of the truth, she seeks to criticize those in power by publishing the very information that they had before his death. Though Pennsylvania's Child Protective Services Law serves weighty interests, it cannot be used to punish her for doing so. We will vacate and remand to let the District Court enter a narrower injunction, which should still protect her on her search.